# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

| | |
|---|---|
| Alexandra Winkelman, individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> vs. <br><br> Midland Credit Management, Inc., <br><br> Defendant. | Case No.: 3:23-cv-00407-VAB |

### PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF HER OPPOSITION TO DEFENDANT MIDLAND CREDIT MANAGEMENT, INC.'S MOTION TO COMPEL ARBITRATION

STEIN SAKS, PLLC

*/s/ Yaakov Saks*
Yaakov Saks, Esq.
One University Ave, Suite 620
Hackensack, NJ 07601
Ph: 201-282-6500
Fax: 201-282-6501
ysaks@steinsakslegal.com

**I.      INTRODUCTION**

Defendant Midland Credit Management, Inc. ("Midland Credit") moves to compel arbitration under the Federal Arbitration Act ("FAA"). Plaintiff Alexandra Winkelman ("Winkelman") brings her claims under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, alleging that Defendant issued a total of five collection letters after she sent a cease-and-desist letter to Defendant requesting all written communications be stopped. Defendant argues that these claims are subject to an arbitration agreement with the original creditor. Defendant argues that Plaintiff's credit card purchases, as well as her failure to exercise the opt-out provision under the arbitration clause, make the arbitration agreement a valid and enforceable contract. Defendant further argues that the arbitration clause is broadly written and Plaintiff's FDCPA claims are included within its scope. Defendant therefore urges this Court is to grant its motion to compel arbitration under the FAA's strong public policy in favor of enforcing arbitration agreements.

But these arguments are largely beside the point. Defendant has failed to establish a valid assignment of the right to enforce the arbitration agreement. This is a crucial omission. Courts have drawn a distinction between the assignment of rights to the underlying agreement, including the right to arbitrate, versus assignment of the right to enforce the debt. Only the former gives a debt collector the right to enforce an arbitration agreement. But the only evidence Defendant provides of a valid assignment of the right to enforce the arbitration agreement is the Declaration of William Peck ("Peck Declaration"), a "Bill of Sale and Assignment" ("Bill of Sale") and Exhibit A to the Bill of Sale showing the files purportedly included in the assignment.

As evidence of the assignment of the right to enforce the arbitration agreement, the Peck Declaration is woefully inadequate. It contains only a single conclusory assertion that Defendant

was assigned the rights to the underlying credit card agreement, including, as relevant here, the right to arbitrate. But the Bill of Sale and other supporting documents – in themselves thin evidence that the right to enforce the arbitration agreement was properly assigned to Defendant – do not support that assertion.

The Bill of Sale states only that the "Accounts" have been assigned, but fails to define the word "Accounts." Moreover, the Bill of Sale specifically leaves the definition of certain capitalized terms not otherwise defined in the Bill of Sale, such as the term "Accounts," to the "Master Purchase and Sale Agreement dated May 16, 2019" ("Master Purchase Agreement"). Additionally, the Bill of Sale conditions the assignment of the "Accounts" on the terms of the Master Purchase Agreement. It is clear by these statements that the Master Purchase Agreement plays a pivotal role in defining what rights were transferred to Defendant, but Defendant, for reasons that are unclear, has simply failed to provide that pivotal document.

Most courts granting a motion to compel have only done so where the master sales agreement is included, whereas they have denied such motions where the agreement is missing. These courts are simply unwilling to make the inferential leap that the right to arbitrate was among those rights that were assigned to the debt collector. The Master Purchase Agreement is therefore the lynchpin of Defendant's motion, and Defendant's failure to include it leaves too large an evidentiary hole to grant Defendant's motion to compel. That is especially true where, as here, the Bill of Sale conditions the assignment on the terms of the Master Purchase Agreement and specifically leaves the definition of "Accounts" to the Master Purchase Agreement. Therefore, Defendant has failed to establish that there is no genuine issue of material fact that it was granted the right to enforce the arbitration agreement (under a Rule 56 standard of review, the relevant standard when reviewing motions to compel arbitration under the FAA).

II. **STATEMENT OF FACTS**

On or around September 29, 2016, Plaintiff opened Costco Anywhere credit card account (the "Account") with Citibank, N.A. ("Citi"). *See* Peck Decl., Dkt. # 11-2, ¶ 10. The Costco Anywhere credit card agreement ("CAA") contains an arbitration clause ("Arbitration Clause"), which states, in relevant part, "You or we may arbitrate any claim, dispute, or controversy between you and us arising out of or related to your Account, a previous related Account or our relationship." *See* Dkt. # 11-2, at 19. The CAA further provides, "Except as provided below, all Claims are subject to arbitration, no matter what legal theory they're based on or what remedy (damages, or injunctive or declaratory relief) they seek, including Claims based on contract, tort (including intentional tort), fraud, agency, your or our negligence, statutory or regulatory provisions, or any other sources of law…" *See Id.* at 19.

The CAA further provides, "Assignment: We may assign any or all of our rights and obligations under this Agreement to a third party. You may not sell, assign or transfer your Account or any of your obligations under this Agreement." *See* Dkt. # 11-2, at 20.

On or about September 16, 2020, Citi sold the right to the "Accounts" to Midland Credit. *See* Dkt. # 11-2, at 37. The Bill of Sale states in relevant part,

> For value received and subject to the terms and conditions of the Master Purchase and Sale Agreement dated May 16, 2019, between the Bank, Department Stores National Bank, and Buyer (the "Master Purchase Agreement"), and that certain Addendum No. 17 dated September 10, 2020, between Bank and Buyer (the "Addendum," and together with the Master Purchase Agreement, the "Agreement"), the Bank does hereby transfer, sell, assign, convey, grant bargain, set over and deliver to Buyer, and to Buyer's successors and assigns, the Accounts summarized on the Asset Schedule attached hereto as Exhibit A and included in the Final Electronic File. Capitalized terms not defined herein shall have the definition ascribed in the Agreement.

*See* Dkt. # 11-2, at 37.

Exhibit A to the Bill of Sale states, in relevant part, "The individual Accounts are described

4

in the Final Electronic File named "Encore-Brands-Costco-DNC-Bulk-Final-0920" delivered by the Bank to Buyer, the same deemed attached hereto by this reference." *See* Dkt. # 11-2, at 38. The "Lot" that was assigned and delivered by Defendant Midland Credit is described in Exhibit A as "3Q2020 Brands and Costco Do Not Call Bulk Accounts." *See Id.* at 38.

**III.     STANDARD OF REVIEW**

The FAA states in relevant part that "a written provision in … a contract … to settle by arbitration a controversy thereafter arising out of such contract … shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA was created "to counter prevalent judicial refusal to enforce arbitration agreements" and therefore stands for "a liberal federal policy favoring arbitration." *Mortenson v. Bresnan Communications, LLC*, 722 F.3d 1151, 1157 (9th Cir. 2013); *see also Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24, 103 S. Ct. 927, 74 L. Ed. 2d 765 (1983); *see also AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339, 131 S. Ct. 1740, 179 L. Ed. 2d 742 (2011)). "Any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24-25.

"In the context of a motion to compel arbitration brought under the FAA, courts apply 'a standard similar to that applicable for a motion for summary judgment.'" *Paltz v. All. Healthcare Servs.*, No. 3:21-cv-0020 (VAB), 2022 U.S. Dist. LEXIS 38329, at *8 (D. Conn. Mar. 4, 2022)(quoting *Bensadoun v. Jobe-Riat*, 316 F.3d 171, 175 (2d Cir. 2003)); *see also McAllister v. Conn. Renaissance Inc.*, No. 3:10cv1488 (WWE), 2011 U.S. Dist. LEXIS 36417, at *8 (D. Conn. Apr. 5, 2011)("A request to compel arbitration requires the court to apply a standard similar to that

5

applicable to a motion for summary judgment."). "The party seeking to compel arbitration must 'substantiate its entitlement to arbitration by a showing of evidentiary facts' that support its claim that the other party agreed to arbitration." *Paltz*, No. 3:21-cv-0020 (VAB), 2022 U.S. Dist. LEXIS 38329 at *8 (quoting *Oppenheimer & Co., Inc. v. Neidhardt*, 56 F.3d 352, 358 (2d Cir. 1995))(cleaned up). "If the party seeking arbitration has substantiated the entitlement by a showing of evidentiary facts, the party opposing may not rest on a denial but must submit evidentiary facts showing that there is a dispute of fact to be tried." No. 3:21-cv-0020 (VAB), 2022 U.S. Dist. LEXIS 38329 at *8-9.

In determining whether a particular dispute is subject to arbitration, courts must first determine whether a valid agreement to arbitrate exists, and then whether the agreement encompasses the dispute at issue. *See Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84, 123 S. Ct. 588, 154 L. Ed. 2d 491 (2002).

**V.      LEGAL ARGUMENT**

**A.  DEFENDANT HAS NOT ESTABLISHED THAT IT WAS ASSIGNED THE RIGHT TO ENFORCE THE ARBITRATION CLAUSE UNDER A RULE 56 STANDARD OF REVIEW**

At the outset, it should be noted that Defendant, by the instant motion to compel, seeks as an alternative form of relief dismissal of this case, based purely on its contention that all claims are arbitrable. This aspect of Defendant's motion is clearly without merit in the Second Circuit. *See Katz v. Cellco P'ship*, 794 F.3d 341, 345-47 (2d Cir. 2015)(strictly construing the statutory text of the FAA to hold that it requires a mandatory stay of proceedings once a court has determined that all claims are arbitrable, and reasoning in part, "The dismissal of an arbitrable matter that properly should have been stayed effectively converts an otherwise-unappealable interlocutory stay order into an appealable final dismissal order. Affording judges such discretion would

empower them to confer appellate rights expressly proscribed by Congress."). *Katz* is binding on this Court, which therefore rules out the requested dismissal.

In support of its contention that Defendant was assigned the rights to enforce the Arbitration Clause, Defendant provides the Peck Declaration. But critically here, the Peck Declaration is missing documentary evidence, such as the Master Sales Agreement, providing definitive proof under the Rule 56(c) standard that the right to arbitrate had been assigned from Citi to Defendant. Applying basic principles of contract law, *see Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1128 (9th Cir. 2013)("The United States Supreme Court has held that a litigant who is not a party to an arbitration agreement may invoke arbitration under the [FAA] if the relevant state contract law allows the litigant to enforce the agreement.")(citing *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 632, 129 S. Ct. 1896, 173 L. Ed. 2d 832 (2009)), courts have consistently found evidence of a master service agreement (and other documents clearly determinative of the issue on their face) to be the decisive factor. *See Davis v. Cach, LLC*, No. 14-cv-03892-BLF, 2015 U.S. Dist. LEXIS 63635, at *10 (N.D. Cal. May 13, 2015)(enforcing an arbitration clause against the plaintiff, in part, because "[t]he Bill of Sale in the Sale Agreement transferred all rights and interest from Capital One to CACH…"); *see also Marcario v. Midland Credit Mgmt.*, No. 2:17-cv-414 (ADS)(ARL), 2017 U.S. Dist. LEXIS, at *7 175129 (E.D.N.Y. Oct. 23, 2017)(finding chain of custody established where "Defendants have submitted multiple sworn affidavits with supporting exhibits that include Bills of Sales, Affidavits of Sale, Assignments, and copies of the electronic records of data to establish assignment of the Plaintiff's account in this case."); *see also Biggs v. Midland Credit Mgmt.*, No. 17-CV-340 (JFB)(ARL), 2018 U.S. Dist. LEXIS 41146, at *16 (E.D.N.Y. Mar. 9, 2018)(finding assignment where "Defendants submitted the White and Collins Affidavits that attach, among other things, the Bill of Sale,

Affidavits of Sale, Account Agreement, and billing account statements for plaintiff's account, in order to show that defendants are entitled to enforce the Arbitration Provision.").

Even a quick perusal of these cases reveals that Defendant has provided the CAA, copies of monthly billing statements, the Bill of Sale and the attached Exhibit A. But, as noted above, critically missing from this list of items is the Master Purchase Agreement. As will be shown below, the Master Purchase Agreement is referenced multiple times in the Bill of Sale and stands as the seminal document defining critical terms, and otherwise outlining the rights Defendant was assigned. Defendant's failure to attach this pivotal document is fatal to its motion to compel arbitration. This Court is therefore without the facts necessary to determine the precise scope of the rights afforded Defendant in the Bill of Sale.

This issue is addressed in a line of cases where courts have drawn a distinction between assignment of the debt versus assignment of the rights to the underlying agreement giving rise to the debt. In the view of these courts, only the latter assigns the right to enforce an arbitration agreement. In *Garcia v. Midland Funding, LLC*, No. 15-6119, 2017 U.S. Dist. LEXIS 68870, 2017 WL 1807563 (D.N.J. May 5, 2017), for example, the court had a copy of the master sales agreement between the creditor and debt collector, and the MSA specifically distinguished between "Receivables" and "Account." *Garcia*, No. 15-6119, 2017 U.S. Dist. LEXIS 68870, 2017 WL 1807563 at *10-11. The MSA defined "Receivables" as "any credit account receivable that is being sold to Buyer pursuant to the terms of this Agreement as such receivable exists as of the Cut-Off Date, to the extent such receivable is set forth on the applicable Notification File." No. 15-6119, 2017 U.S. Dist. LEXIS 68870, 2017 WL 1807563 at *11. "Account" referred to "any credit account owned by Seller with respect to which there is a receivable." *Id.* at *11. The sales clause of the MSA provided the following: "Seller shall sell and Buyer shall buy all right (including

the right to legally enforce, file suit, collect, settle or take any similar action with respect to such Receivable), title and interest in and to the Receivables with respect to which Buyer has received a Notification File." *Id.* The underlying credit agreement provided that the creditor "may assign, transfer, or sell any or all rights associated with Plaintiff's credit account." *Id.*

The court found that "even with a healthy regard for the strong federal policy in favor of arbitration," the MSA assigned only the right to collect the receivables, not an overall right to enforce the various different aspects of the underlying credit agreement, such as the arbitration agreement. *Garcia*, No. 15-6119, 2017 U.S. Dist. LEXIS 68870, 2017 WL 1807563 at *11-12. The court reasoned,

> The Agreement certainly passed the "Receivables" and associated rights from GECRB to Defendant, but the Court does not find that the Agreement transferred *all* of the rights associated with Plaintiff's account to Defendant. Defendant received rights associated with the Receivables. Defendant acquired the right to collect the receivable, the right to bring an action to collect the receivable, etc., but the Agreement does not, on its face, convey the broad right to compel arbitration for "any dispute or claim" relating to Plaintiff's Account. Koehler Affidavit, Ex. B.

No. 15-6119, 2017 U.S. Dist. LEXIS 68870, 2017 WL 1807563 at *11-12 (emphasis in original). It was clear from this case that the MSA was the critical overriding document that provided relevant definitions of terms and parsed out the various different rights that had been assigned to the debt collector, in this case distinguishing between "Receivables" and "Account," and only assigning the right to collect the former.

Relying on *Garcia*, the court in *Lance v. Midland Credit Mgmt.*, 375 F. Supp. 3d 604 (E.D. Pa. 2019) denied a motion to compel arbitration without a copy of the critical document, "Forward Flow Accounts Purchase Agreement." *Lance*, 375 F. Supp. 3d at 615. The defendant attempted to distinguish *Garcia* by pointing out that "Accounts" was in the title of the MSA and therefore, in conjunction with the accompanying affidavits attesting that the defendant had purchased a pool of accounts from the original creditor, which had transferred electronic records related to those

9

accounts, it was clear that the defendant had been assigned the right to arbitrate. 375 F. Supp. 3d at 615.

The court rejected this argument, however, and noted that it was critically missing the "Forward Flow Accounts Purchase Agreement" which would have defined relevant terms and outlined the precise scope of rights that had been assigned to the defendant. *Lance*, 375 F. Supp. 3d at 615. The court succinctly reasoned,

> Midland seems to miss the argument. We have no document defining "Account" as the term is used in the Bill of Sale and cannot determine whether Synchrony Bank intended to convey all of its rights under its Agreement with Mr. Lance, including the right to arbitration. We have only the Bill of Sale stating Synchrony Bank "hereby transfers, sells, conveys, grants, and delivers to [Midland Funding], its successors and assigns, without recourse except as set forth in the [Forward Flow Accounts Purchase Agreement], the Accounts as set forth in the Notification Files … ."

375 F. Supp. 3d at 615. The court also noted that it was missing the "Notification Files. *Id.* at 614. Based on these crucial omissions, the court was unable to grant the motion to compel as it was unable to determine whether the right to arbitrate had been included in the assignment of "Accounts." *Id.* at 615.

Other documents in the record supported this conclusion. The underlying credit agreement signed by the plaintiff, for example, distinguished between the assignment of "rights or duties under this Agreement *or* your account, including our rights to payments ...." *Lance*, 375 F. Supp. 3d at 615 (emphasis in original). The court reasoned, "By separating 'rights' from 'account', Synchrony Bank may be describing two different assets." 375 F. Supp. 3d at 615. The court further found that the language of the arbitration clause only deepened the mystery of what had actually been assigned to the defendant. *Id.* at 615. The arbitration clause's constant references to the account and users of the account made it unclear if the right to arbitrate had been included in the assignment of the accounts. *Id.* Moreover, the court noted that the contracting parties could

have made it abundantly clear in their contracting documents which rights had been conferred, but chose not to do so. *Id.* The most important document left out of the equation, the "Forward Flow Accounts Purchase Agreement," presumably the one that could answer all of these questions, was not in the record. *Id.* The court therefore declined the motion to compel. *Id.*

Also relying on *Garcia*, the court in *Lester v. Portfolio Recovery Assocs., LLC*, No. 1:18-CV-0267-VEH, 2018 U.S. Dist. LEXIS 115527 (N.D. Ala. July 11, 2018) also denied a motion to compel arbitration. *Lester*, No. 1:18-CV-0267-VEH, 2018 U.S. Dist. LEXIS 115527 at *18-19. The underlying credit agreement provided that the creditor "may sell, assign, or transfer any or all of our rights or duties under this Agreement or your account, including our rights to payments." No. 1:18-CV-0267-VEH, 2018 U.S. Dist. LEXIS 115527 at *5. The creditor assigned a pool of accounts to the defendant, and the defendant later tried to claim that it was entitled to enforce the arbitration clause contained in the underlying credit agreement. *Id.* at *5-6. The creditor provided an affidavit attesting that the plaintiff's account was part of a pool of accounts that had been sold to defendant. *Id.*

The only other document provided in the record, the Bill of Sale, stated in relevant part: "Seller hereby transfers, sells, conveys, grants, and delivers to Buyer, its successors and assigns, without recourse except as set forth in the Agreement, to the extent of its ownership, the Receivables as set forth in the Notification Files (as defined in the Agreement), delivered by Seller to Buyer on June 23, 2016, and as further described in the Agreement." *Lester*, No. 1:18-CV-0267-VEH, 2018 U.S. Dist. LEXIS 115527 at *6. As with many of the other cases, including this one, the court was missing the "Forward Flow Receivables Purchase Agreement" and the "Notification Files," both of which were referenced in the Bill of Sale, as well as the "Affidavit of

Sale of Account," which had been mentioned in the creditor's affidavit. No. 1:18-CV-0267-VEH, 2018 U.S. Dist. LEXIS 115527 at *6.

Based on this limited information, the court was unable to grant the motion to compel arbitration. *Lester*, No. 1:18-CV-0267-VEH, 2018 U.S. Dist. LEXIS 115527 at *20. The court reasoned that "Koehler's declaration does not define 'account,' nor does it state that the intent of the parties was to convey to PRA all of Synchrony's rights and privileges under the credit agreement." No. 1:18-CV-0267-VEH, 2018 U.S. Dist. LEXIS 115527 at *18-19. The court found that the "declaration also contradicts the Bill of Sale attached thereto, which purports to convey only 'receivables.'" *Id.* at *19. Finally, the court found that it was critically missing "Forward Flow Receivables Purchase Agreement," which had been referenced in the Bill of sale. *Id.* Based on this deficient evidence, the court found that only the receivables – and the right to collect such receivables – had been assigned. *Id.* at *19-20.

At least one other court has used similar reasoning to deny a defendant debt collector's motion to compel arbitration. *See Kress v. Cavalry SPV I, LLC*, Civil Action No. 20-3176 (MAS) (DEA), 2021 U.S. Dist. LEXIS 57764, at *8 (D.N.J. Mar. 24, 2021)("Plaintiff notes that Defendants submitted a Bill of Sale and Assignment which contains the undefined term 'Accounts.' Plaintiff also notes that Defendants did not produce the Master Purchase and Sale Agreement referenced therein, which may clarify whether the right to enforce the arbitration provision was transferred with the sale of Plaintiff's account. Thus, even if the Court were to consider the documents attached to the instant Motion, those documents do not conclusively establish that Plaintiff is subject to arbitration.").

Here, Defendant provides the Peck Declaration, the Bill of Sale and Exhibit A to the Bill of Sale purportedly showing the files included in the assignment to Defendant. Much like *Lance*,

*Lester* and *Kress*, however, Defendant has failed to provide the critical document defining the term "Accounts" and specifically referenced in the Bill of Sale, the Master Purchase Agreement. *See generally* Dkt. # 11-2. Additionally, the Bill of Sale leaves the definition of certain capitalized terms not otherwise defined in the Bill of Sale, such as the term "Accounts," to the Master Purchase Agreement. *See Id.* at 37 (stating in relevant part, "Capitalized terms not defined herein shall have the definition ascribed in the Agreement."). The Bill of Sale also conditions the assignment of the "Accounts" on the terms of the Master Purchase Agreement. *See Id.* (stating that the assignment is "subject to the terms and conditions of the … Master Purchase Agreement … and that certain Addendum No. 17 dated September 10, 2020, between Bank and Buyer (the 'Addendum,' and together with the Master Purchase Agreement, the 'Agreement')… .").

It is clear by these statements that the Master Purchase Agreement plays a pivotal role in defining what rights were transferred to Defendant, but Defendant, for reasons that are unclear, has simply failed to provide that pivotal document. This is similar to *Lance*, *Lester* and *Kress*, where the defendants were able to produce the bill of sale in each of those cases, but critically failed to produce the "Forward Flow Purchase Agreements." In each of those cases, the courts recognized the vital role the "Forward Flow Purchase Agreements" played in defining the term "Accounts" and therefore the scope of the rights assigned. *See Lance*, 375 F. Supp. 3d at 615; *see also Lester*, No. 1:18-CV-0267-VEH, 2018 U.S. Dist. LEXIS 115527 at *19; *see also Kress*, Civil Action No. 20-3176 (MAS) (DEA), 2021 U.S. Dist. LEXIS 57764 at *8. Without it, at best, the courts were unable to determine whether the right to arbitrate had been assigned, and at worst, the courts were left with the impression that all that had been assigned was the right to collect the receivables. *See, together, Id.* The same is true here. Without the Master Purchase Agreement, the most that can be said for Defendant's motion is that it is impossible to tell what rights have

been assigned. Defendant's motion therefore fails to establish assignment of the right to arbitrate under a Rule 56-like standard.

Without the Master Purchase Agreement, the Court is left with the Bill of Sale, Exhibit A to the Bill of Sale, and the Peck Declaration. The Bill of Sale states only that the "Accounts" have been assigned, but, like *Lance*, *Lester* and *Kress*, fails to define the word "Accounts." *See* Dkt. # 11-2, at 37 (stating in relevant part, "Bank does hereby transfer, sell, assign, convey, grant bargain, set over and deliver to Buyer, and to Buyer's successors and assigns, *the Accounts* summarized on the Asset Schedule attached hereto as Exhibit A and included in the Final Electronic File.")(emphasis added); *see also Lance*, 375 F. Supp. 3d at 615; *see also Lester*, No. 1:18-CV-0267-VEH, 2018 U.S. Dist. LEXIS 115527 at *19; *see also Kress*, Civil Action No. 20-3176 (MAS) (DEA), 2021 U.S. Dist. LEXIS 57764 at *8. Thus, much like the Master Purchase Agreement itself, the Bill of Sale is missing a critical missing link that would establish, on its own, that Defendant had been assigned the right to arbitrate by virtue of assignment of the Accounts. But as the analysis above portrays, the Bill of Sale leaves the heavy lifting to the Master Purchase Agreement.

Muddying the waters further, the Bill of Sale leaves any exposition of the details of the "Accounts" to the description provided in the attached "Final Electronic File." *See* Dkt. # 11-2, at 37 (stating in relevant part, "Bank does hereby transfer, sell, assign, convey, grant bargain, set over and deliver to Buyer, and to Buyer's successors and assigns, the Accounts summarized on the Asset Schedule attached hereto as Exhibit A and *included in the Final Electronic File.*")(emphasis added). However, like *Lance* and *Lester*, where the defendant had failed to provide copies of the "Notification Files" to the court, Defendant here fails to provide the "Final Electronic File." *See Lance*, 375 F. Supp. 3d at 614; *see also Lester*, No. 1:18-CV-0267-VEH, 2018 U.S. Dist. LEXIS

14

115527 at *6.

Further review of the language contained in Exhibit A only confirms this conclusion. Exhibit A states in relevant part, "The individual Accounts are described in the Final Electronic File named 'Encore-Brands-Costco-DNC-Bulk-Final-0920' delivered by the Bank to Buyer, the same deemed attached hereto by this reference." *See* Dkt. # 11-2, at 38.  Defendant only provides here Exhibit A, but critically fails to include "the Final Electronic File named 'Encore-Brands-Costco-DNC-Bulk-Final-0920.'"   Thus, whatever description that is afforded by "the Final Electronic File named 'Encore-Brands-Costco-DNC-Bulk-Final-0920'" is notably missing from the record here, much like it was in *Lance* and *Lester*.

Moreover, by failing to provide the "Final Electronic File," Defendant has failed to establish a key element of proof on its motion to compel – that it was actually assigned Plaintiff's Account, as opposed to being assigned a generalized pool of accounts in which the Account may or may not fall.  *See* Dkt. # 11-2, at 37-38.  Again, although the Peck Declaration makes conclusory statements to this effect, *see* Dkt. # 11-2, at 5, ¶ 21, the attached Exhibit A provides, at best, only a generalized description of the accounts that were assigned, but hardly provides the level of detail necessary to establish that the Account was among those accounts in the pool of accounts assigned to Defendant under the Bill of Sale.  Thus, even assuming that Defendant could establish that assignment of the Account established assignment of the right to enforce the Arbitration Clause, which Plaintiff vigorously contests, Defendant cannot answer the basic question of whether the Account was assigned in the first place.

Turning now to the Peck Declaration, standing alone as evidence of assignment of the right to arbitrate, the Peck Declaration is woefully inadequate.  It contains only a single conclusory assertion that, "[o]n September 16, 2020, Citibank sold all rights, title, and interest in the Account

15

to Midland Credit Management, Inc. in accordance with the Bill of Sale and Assignment attached hereto as Exhibit A-3." *See* Dkt. # 11-2, at 5, ¶ 21. Much like the declaration in *Lester*, however, the Peck Declaration "does not define '[A]ccount,' nor does it state that the intent of the parties was to convey to [Defendant] all of [Citi's] rights and privileges under the credit agreement." *See generally* Peck Decl.; *see also Lester*, No. 1:18-CV-0267-VEH, 2018 U.S. Dist. LEXIS 115527 at *18-19.

Moreover, a closer reading of the Bill of Sale and its accompanying Exhibit A reveals that it does not support the contention that Defendant was assigned the rights to the CAA, including the right to enforce the Arbitration Clause. Exhibit A states that the "individual Accounts are described in the Final Electronic File named 'Encore-Brands-Costco-DNC-Bulk-Final-0920,'" but again, Defendant has failed to include that file. *See* Dkt. # 11-2, at 38. Therefore, as noted above, even assuming that assignment of "Accounts" is an assignment of the right to enforce the arbitration agreement, which Plaintiff vigorously contests, it is impossible to tell whether Plaintiff's account was included in the batch of accounts assigned to Defendant in the Bill of Sale, and thus whether Defendant was even given the rights of Plaintiff's specific credit agreement.

Even if the file were complete, however, Exhibit A suggests that Defendant was assigned nothing more than the right to enforce the debt itself. The columns displayed in Exhibit A are "Accounts," "Sale Balance, "Cut-Off Date," and "Purchase Price Percentage," *see* Dkt. # 11-2, at 38, all of which suggest that the parties to the Master Purchase Agreement were focused exclusively on transferring the rights to the debt and all of the appurtenances to the debt, including the balance, cut-off date, and purchase price percentage. There is no consideration for the arbitration clause here.

Defendant's additional documents scarcely warrant mention. While the CAA states that

the agreement is assignable, on its face the agreement is no evidence at all that an assignment actually took place. Moreover, much like *Lance*, the clear delineation between the assignment of "our rights and obligations under this Agreement" and assignment of the "Account," supports the conclusion that Citibank new and understood the difference between assigning the rights to enforce the agreement versus assigning the rights to enforce the debt. *Compare Lance*, 375 F. Supp. 3d at 615 (noting that the credit agreement permitted assignment of ""rights or duties under this Agreement or your account, including our rights to payments ....," and concluding, "By separating 'rights' from 'account', Synchrony Bank may be describing two different assets.") *with* Dkt. # 11-2, at 20 ("We may assign any or all of our rights and obligations under this Agreement to a third party. You may not sell, assign or transfer your Account or any of your obligations under this Agreement."). Not only does the CAA go out of its way to distinguish between assignment of the "Account" and assignment of "any of your obligations under this Agreement," suggesting that Citi knew perfectly well the difference between the two, but the CAA then specifically differentiates among rights under the CAA, referring to each as potentially separate rights that can be assigned under the CAA, *i.e.* "We may assign *any or all* of our rights and obligations under this Agreement…"). *See Id.* at 20 (emphasis added). Having failed to explicitly assign rights to the underlying CAA, including the right to enforce the Arbitration Clause, rights Citi knew perfectly to be distinguishable from the right to collect on the Account, it is clear that nothing more than the right to collect the debt was assigned.

In sum, not only does the crucial omission of the Master Purchase Agreement fail to live up to Rule 56 standards in establishing that there is no genuine issue of material fact that Defendant was assigned the right to enforce the arbitration agreement, but the documents Defendant does provide suggest that all that was assigned was the right to enforce the debt.

## VI. CONCLUSION

For the reasons set forth above, Defendant's motion to stay proceedings and compel arbitration, or, in the alternative, to dismiss this case, should be denied in its entirety.

Dated:  October 3, 2023                    Respectfully Submitted,

**STEIN SAKS, PLLC**

*/s/ Yaakov Saks*

Yaakov Saks, Esq.

## **CERTIFICATE OF SERVICE**

I hereby certify that on October 3, 2023, I electronically filed the foregoing with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

          */s/ Yaakov Saks*
          Yaakov Saks, Esq.