UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| ALEXANDRA WINKELMAN, individually and behalf of all others similarly situated,<br>*Plaintiff*,<br><br>v.<br><br>MIDLAND CREDIT MANAGEMENT INC.,<br>*Defendant*. | No. 3:23-cv-407 (VAB) |

**RULING AND ORDER ON MOTION TO COMPEL ARBITRATION**

Alexandra Winkelman ("Ms. Winkelman" or "Plaintiff") initiated this putative class action on March 31, 2023 against Midland Credit Management, Inc. ("Midland Credit" or "MCM" or "Defendant") for alleged violations of the Fair Debt Collection Practices Act (the "FDCPA"). Compl. at 1, ECF No. 1 ("Compl.").

On September 12, 2023, Midland Credit moved to compel arbitration and to dismiss this action without prejudice pending arbitration. Mot. to Compel Arbitration, ECF No. 11 ("Mot.").

On October 3, 2023, Ms. Winkelman filed an opposition to the motion to compel. Mem. in Opp. re Mot. to Compel Arbitration, ECF No. 12 ("Opp."). No reply was filed.

For the reasons that follow, Midland Credit's motion to compel arbitration is **DENIED without prejudice** to renewal.

1

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. Factual Background

Ms. Winkelman has sued Midland Credit for alleged violations of the FDCPA arising from its debt collection practices involving sending debt collection letters and attempting to collect consumers debts despite receiving cease and desist letters. *See* Compl. at 1–3.

### B. Procedural Background

On March 31, 2023, Ms. Winkelman initiated this putative class action against Midland Credit Management, Inc. *See* Compl.

On June 13, 2023, Midland Credit filed its Answer. *See* Answer, ECF No. 10.

On September 12, 2023, Midland Credit moved to compel arbitration and to dismiss this action without prejudice pending arbitration. *See* Mot.; Mem. of L. in Supp. of Mot. to Compel Arbitration, ECF No. 11-1 ("Mem.").

On October 3, 2023, Ms. Winkelman filed an opposition to the motion to compel. *See* Opp.

## II. STANDARD OF REVIEW

The Federal Arbitration Act ("FAA") "establishes a national policy favoring arbitration when the parties contract for that mode of dispute resolution." *Preston v. Ferrer*, 552 U.S. 346, 349 (2008). Section 2 of the FAA provides that "[a] written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Section 4 of the FAA enables any "party aggrieved" by the failure of another to arbitrate under a

written agreement for arbitration to petition a United States District Court "for an order directing that such arbitration proceed in the manner provided for in such agreement." *Id.* § 4.

Courts follow a two-part test to determine whether claims are subject to arbitration, considering "(1) whether the parties have entered into a valid agreement to arbitrate, and, if so, (2) whether the dispute at issue comes within the scope of the arbitration agreement." *In re Am. Express Fin. Advisors Sec. Litig.*, 672 F.3d 113, 128 (2d Cir. 2011). "A court may not deny arbitration where there is a valid arbitration agreement that covers the asserted claims." *Davis v. Macy's Retail Holdings, Inc.*, No. 3:17-CV-1807 (JBA), 2018 WL 4516668, at *2 (D. Conn. Sept. 19, 2018) (citation omitted).

The court, "upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement . . . ." 9 U.S.C. § 3; *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 229 (2d Cir. 2016) ("The district court must stay proceedings once it is 'satisfied that the parties have agreed in writing to arbitrate an issue or issues underlying the district court proceeding.'" (quoting *WorldCrisa Corp. v. Armstrong*, 129 F.3d 71, 74 (2d Cir. 1997))).

**III.   DISCUSSION**

For motions to compel arbitration brought under the FAA, courts apply "a standard similar to that applicable for a motion for summary judgment." *Bensadoun v. Jobe-Riat*, 316 F.3d 171, 175 (2d Cir. 2003); *see also McAllister v. Conn. Renaissance Inc.*, No. 3:10-CV-1488 (WWE), 2011 WL 1299830, at *3 (D. Conn. Apr. 5, 2011) (applying summary judgment standard in the context of a motion to compel arbitration), *aff'd*, 496 F. App'x 104 (2d Cir. 2012). The party seeking to compel arbitration must "substantiat[e] [its] entitlement [to

3

arbitration] by a showing of evidentiary facts" that support its claim that the other party agreed to arbitration. *Oppenheimer & Co. v. Neidhardt*, 56 F.3d 352, 358 (2d Cir. 1995). "If the party seeking arbitration has substantiated the entitlement by a showing of evidentiary facts, the party opposing may not rest on a denial but must submit evidentiary facts showing that there is a dispute of fact to be tried." *Id.* (citation omitted). If the evidence suggests a genuine issue of material fact, the court must summarily proceed to trial. *Bensadoun*, 316 F.3d at 175 (citing 9 U.S.C. § 4).

"The Supreme Court has instructed that state law governs whether a non-signatory may enforce an arbitration clause." *Doe v. Trump Corp.*, 6 F.4th 400, 412 n.8 (2d Cir. 2021). "[A] litigant who was not a party to the relevant arbitration agreement may invoke § 3 [staying proceeding pending arbitration] if the relevant state contract law allows him to enforce the agreement." *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 632 (2009); *see also First Options of Chi. Inc. v. Kaplan*, 514 U.S. 938, 944 (1995) ("When deciding whether the parties agreed to arbitrate a certain matter (including arbitrability), courts generally (though with a qualification we discuss below) should apply ordinary state-law principles that govern the formation of contracts." (citing cases)).

Under Connecticut law,[1] a contract is formed through an offer and an acceptance of that offer. *See Bridgeport Pipe Eng'g Co. v. DeMatteo Constr. Co.*, 268 A.2d 391, 393 (1970) ("It is elementary that to create a contract there must be an unequivocal acceptance of an offer. . . . The acceptance of the offer must, however, be explicit, full and unconditional." (citations omitted)); *Ubysz v. DiPietro*, 440 A.2d 830, 833 (1981) ("[I]n order to form a contract, generally there must

---

[1] The relevant state contract law is Connecticut law. Midland Credit argues that South Dakota also applies because of the choice-of-law provision in the credit card agreement, however, this Court must first determine whether the credit card agreement governs the parties' relationship.

4

be a bargain in which there is a manifestation of mutual assent to the exchange between two or more parties; and the identities of the contracting parties must be reasonably certain." (internal citations omitted)).

Midland Credit argues that Ms. Winkelman stopped making payments on the Account after a December 3, 2019, payment, and then on September 16, 2020, CitiBank sold all rights, title, and interest in the Account to Midland Credit, and the credit card agreement's arbitration clause was never amended. Mem. at 3. In Midland Credit's view, this arbitration clause—included in the terms of a credit card agreement for a CitiBank issued, Costco-branded, credit card account (the "Account"), which Ms. Winkelman opened—governs, Mem. at 1–4, and validly includes all of the claims brought by it against Ms. Winkelman because they "fall squarely within the arbitration provision's scope." *Id.* at 7–10. As a result, Midland Credit argues that Ms. Winkelman must engage in arbitration under Section 4 of the FAA and "this Court should dismiss, or in the alternative, stay this matter pursuant to Section 3 of the FAA." *Id.* at 7.

In her response, Ms. Winkelman argues that Midland Credit's arbitration arguments fall short because Midland Credit "failed to establish a valid assignment of the right to enforce the arbitration agreement." Opp. at 2. In her view, this is a "crucial omission" as courts distinguish between the assignment of rights to the underlying agreement, including the right to arbitrate, and the assignment of the right to enforce the debt. *Id.* ("Only the former gives a debt collector the right to enforce an arbitration agreement. But the only evidence Defendant provides of a valid assignment of the right to enforce the arbitration agreement is the Declaration of William Peck ("Peck Declaration"), a "Bill of Sale and Assignment" ("Bill of Sale") and Exhibit A to the Bill of Sale showing the files purportedly included in the assignment."). According to Ms. Winkelman, there is a genuine issue of material fact as to whether Midland Credit had been

5

assigned the right to enforce the arbitration agreement because Midland Credit's motion and its attached evidence (the declaration and the bill of sale but not the Master Purchase Agreement) are insufficient *Id.* at 2, 6, 17.

The Court agrees.

To determine whether Midland Credit had been assigned the right to enforce the arbitration clause with respect to any claims brought by Ms. Winkelman, it is not enough to have documentation reflecting an assignment generally over any claim. There also must be specific documentation reflecting an assignment over Ms. Winkelman's claims. *See, e.g.*, *Kress v. Cavalry SPV I, LLC*, No. CV-20-3176 (MAS) (DEA), 2021 WL 1139875, at *3 (D.N.J. Mar. 24, 2021) ("Plaintiff also notes that Defendants did not produce the Master Purchase and Sale Agreement referenced therein, which may clarify whether the right to enforce the arbitration provision was transferred with the sale of Plaintiff's account. Thus, even if the Court were to consider the documents attached to the instant Motion, those documents do not conclusively establish that Plaintiff is subject to arbitration." (citations omitted)); *Lance v. Midland Credit Mgmt. Inc.*, 375 F. Supp. 3d 604, 615–16 (E.D. Pa. 2019) ("We have no document defining 'Account' as the term is used in the Bill of Sale and cannot determine whether Synchrony Bank intended to convey all of its rights under its Agreement with Mr. Lance, including the right to arbitration.").

Here, while the Bill of Sale and Assignment that Midland Credit submitted with its motion states that "subject to the terms and conditions of the Master Purchase and Sale Agreement . . . [CitiBank] does hereby transfer, sell, assign, convey, grant, bargain, set over and deliver to Buyer [Midland Credit], and to Buyer's successors and assigns, the Accounts . . . ," Ex. A-3, ECF No. 11-2, the Master Purchase and Sale Agreement has not been submitted. As a

6

result, the Court cannot determine what "terms and conditions" came with the assignment to Midland Credit—and what rights, significantly here, regarding the arbitration provision, Midland Credit was assigned. *See Marcario v. Midland Credit Mgmt., Inc.*, No. 2:17-CV-414 (ADS) (ARL), 2017 WL 4792238, at *3 (E.D.N.Y. Oct. 23, 2017) ("For the purpose of enforcing the arbitration agreement, the Defendants have proved, by a preponderance of the evidence, that the title of the Plaintiff's account originated from Credit One Bank and passed to MHC Receivables, LLC, then to FNBM, LLC, subsequently to Sherman Originator III LLC, and finally to Midland Funding. The 'chain of custody' was adequately established by the evidence to conclude that the Arbitration Agreement also was so assigned."); *Brecher v. Midland Credit Mgmt., Inc.*, No. 18-CV-3142 (ERK) (JO), 2019 WL 1171476, at *6 (E.D.N.Y. Mar. 13, 2019) ("The documentary evidence submitted by Midland would be sufficient to establish that Synchrony transferred its rights to Midland. Midland submitted a Bill of Sale and an Affidavit of Sale indicating that Synchrony sold its rights and a pool of charge-off accounts to Midland in addition to providing Midland with records . . . on individual [a]ccounts. Midland also presented a copy of the information transferred to Midland identifying Sara Brecher's debt as one of the purchased debts within the portfolio received from Synchrony. Indeed, the Complaint alleges that Midland sent Brecher a letter seeking to collect on the debt acquired from Synchrony, which Midland could not have done without first receiving her debt and contact information from Synchrony." (citations and quotation marks omitted)); *see also Garcia v. Midland Funding, LLC*, No. CV 15-6119-(RBK/KMW), 2017 WL 1807563, at *3 (D.N.J. May 5, 2017) ("The Court finds that, even with a 'healthy regard for the strong federal policy in favor of arbitration,' the Agreement did not clearly convey the right to demand individual arbitration in the instant case from [the bank] to

Defendant." (quoting *John Hancock Mut. Life Ins. Co. v. Olick*, 151 F.3d 132, 137 (3d Cir. 1998))).

Accordingly, as Midland Credit has failed to establish that no factual disputes exists as to whether Connecticut contract law allows it to enforce the arbitration provision of the agreement, the Court will deny its motion to compel arbitration, and does so without prejudice to renewal.[2]

## IV. CONCLUSION

For the reasons explained above, Midland Credit's motion to compel arbitration is **DENIED without prejudice** to renewal.

**SO ORDERED** at New Haven, Connecticut this 27th day of July, 2024.

/s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE

---

[2] *See, e.g.*, *Kress v. Cavalry SPV I, LLC*, No. CV-20-3176 (MAS) (DEA), 2021 WL 1139875, at *3 (D.N.J. Mar. 24, 2021) ("[T]he Court denies Defendants' Motion without prejudice and will permit the parties to engage in limited discovery on the issue of arbitrability."); *Lance v. Midland Credit Mgmt. Inc.*, No. CV 18-4933, 2019 WL 2143362, at *1 (E.D. Pa. May 16, 2019) ("[W]e denied the debt collector's motion to compel arbitration because it failed to show it purchased either the agreement with the arbitration mandate or the rights under the 'account' it purchased. We allowed the debt collector to take discovery and renew a motion to compel arbitration should it adduce evidence of buying the arbitration right after discovery."); *Henggeler v. Brumbaugh & Quandahl, P.C., LLO*, 894 F. Supp. 2d 1180, 1189 (D. Neb. 2012) ("Defendant Midland's Motion to Stay and to Compel Arbitration, or Alternatively, to Dismiss in Favor of Arbitration (Filing No. 45) is denied without prejudice to its reassertion at the completion of sufficient discovery.").